

# NUMBER 13-09-00619-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**ALFREDO ELIAS GOMEZ,** <span style="float:right">**Appellant,**</span>

**v.**

**THE STATE OF TEXAS,** <span style="float:right">**Appellee.**</span>

---

### On appeal from the 139th District Court
### of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

**Before Justices Yañez, Garza, and Benavides**
**Memorandum Opinion by Justice Benavides**

Appellant, Alfredo Elias Gomez, was indicted on a charge of capital murder, and the jury found him guilty of the lesser-included offense of murder. *See* TEX. PENAL CODE ANN. § 19.02(b) (Vernon Supp. 2010). The jury assessed punishment at life imprisonment in the Institutional Division of the Texas Department of Criminal Justice. *Id*. § 12.32 (Vernon

Supp. 2010). By four issues, Alfredo argues on appeal that the trial court erred by: (1) including a charge to the jury on criminal conspiracy because it was not charged in the indictment and is not a lesser-included offense of capital murder; (2) failing to provide an answer blank for the charge of criminal conspiracy if it was to be included in the jury charge; (3) failing to provide an instruction on the range of punishment for conspiracy and a blank in the punishment charge for the jury to consider that range of punishment; and (4) charging the jury on aggravated robbery, which is not included in the indictment and is not a lesser-included offense of capital murder. We affirm.

## I. BACKGROUND

The testimony in this case indicated that the appellant, Alfredo, along with several friends and family members, entered the home of Miguel Cahue under false pretenses in order to rob him. Two of Alfredo's associates, Marvin Gomez and Jose Martinez, agreed to reduced sentences in exchange for their testimony. Their testimony and the other evidence at trial indicated that Alfredo rang the doorbell and asked to use the bathroom. After being let in, another of Alfredo's group rang the doorbell and threatened Cahue with a BB gun. Several people in Alfredo's group then entered the house to take valuables, while one person, Michael Anthony Mancha, sat on top of Cahue and covered his face with a sweater. Alfredo attempted to duct-tape Cahue's legs. Alfredo's own testimony indicated that when Cahue refused to cooperate, Alfredo began to "hit his ankles" and that he "hit and kicked" Cahue while Mancha hit Cahue in the head numerous times—possibly with a weapon. The others scoured the house and were later found to have in their possession a portable DVD player, jewelry, and a camera that belonged to Cahue. Cahue was bleeding throughout the living room, and after the robbery was complete, several of the

2

group picked him up and dragged him to the bathroom. Cahue died of his injuries and was discovered in his bathroom the following day by police officers who were called when Cahue failed to show up to a doctor's appointment or return phone calls from his friends and family. There was some disagreement among those testifying as to who hit Cahue, who restrained him, who stayed in the car, and who moved him to the bathroom. Alfredo was ultimately found to be in possession of a majority of the stolen items, the BB gun, and a shirt with Cahue's blood on it.

The jury charge included instructions on capital murder, murder, and aggravated robbery. Each of the instructions included the option to find Alfredo guilty of the offense by reason that Alfredo "encouraged, directed, aided, or attempted to aid" his associates in that crime. Alfredo was found guilty of murder, and the jury assessed punishment at life imprisonment. No relevant objections were made to the jury charge before it was presented to the jury.

## II. STANDARD OF REVIEW

"Our first duty in analyzing a jury-charge issue is to decide whether error exists. Then, if we find error, we analyze that error for harm." *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (citing *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)). The degree of harm required to reverse the trial court's judgment depends on whether or not the appellant objected to the charge before it was given to the jury. *Id*. Under *Almanza v. State*, if the defendant has properly objected to the charge, we need only find "some harm" to reverse the trial court's judgment. *Ngo,* 175 S.W.3d at 743-44 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). When the defendant fails to object, however, or states that he has no objection to the

3

charge, "we will not reverse for jury-charge error unless the record shows 'egregious harm' to the defendant." *Id*.

### III. ANALYSIS

By his first issue, Alfredo contends that conspiracy is not a lesser-included offense of capital murder because it includes additional elements not needed to sustain a charge of capital murder—namely, an agreement to engage in criminal conduct between two or more people and an overt act pursuant to that agreement. Alfredo claims that because it was not a lesser-included offense, and because it was not included in the indictment, conspiracy should not have been included in the possible methods of the offense as instructed. We disagree with the premises of Alfredo's argument.

Alfredo is correct that criminal conspiracy is not a lesser-included offense of capital murder. *See Woodard v. State*, No. PD-0130-10, 2010 Tex. Crim. App. LEXIS 1238, at *1 (Tex. Crim. App. Oct. 6, 2010); *see also Hall v. State*, 225 S.W.3d 534, 536 (Tex. Crim. App. 2007) (outlining the two-step approach to determine if an offense is a lesser-included offense of another offense). Alfredo is also correct that it would have been error for the trial court to instruct the jury on this offense. *See Woodard*, 2010 Tex. Crim. App. LEXIS 1238, at *1 (finding that an instruction for an unindicted offense of conspiracy constituted error by the trial court). However, the jury was not instructed on a charge of criminal conspiracy. In his brief, Alfredo confuses an instruction on criminal conspiracy with the instruction actually presented to the jury—criminal responsibility for the anticipated result of a conspiracy to commit a felony as one possible means by which the jury could have

4

found the defendant guilty of murder, commonly known as the law of parties.[1]

It is permissible for each juror to find a defendant guilty of the same crime based on different theories of the means by which the crime was committed—the law of parties being only one that was presented to the jury. *See Pizzo v. State*, 235 S.W.3d 711, 714 (Tex. Crim. App. 2008) ("Jury unanimity is required on the essential elements of the offense," but is "generally not required on the alternative modes or means of commission."); *Huffman v. State*, 267 S.W.3d 902, 905 (Tex. Crim. App. 2008) (holding that different legal theories of criminal liability involving the same victim are alternative methods of committing the same offense, and not different offenses). The law of parties, as it was charged in this case, does not constitute a separate offense. *See Holford v. State*, 177 S.W.3d 454, 462-63 (Tex. App.–Houston [1st Dist.] 2005, pet. ref'd) ("The paragraphs instructing on conspiracy and law of parties include a transferred intent as a potential means of committing the offense, but the transferred intent ultimately relates to the same *actus*

---

[1] The "law of parties" is described in Texas Penal Code, section 7.02. That section provides:

> If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

Tex. Penal Code Ann. § 7.02(b) (Vernon 2003). The statute on criminal conspiracy found in Texas Penal Code section 15.02 provides:

> A person commits criminal conspiracy if, with intent that a felony be committed:
>
> (1)  he agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense; and
>
> (2)  he or one or more of them performs an overt act in pursuance of the agreement.

*Id.* § 15.02 (Vernon Supp. 2009).

*reus*.").

Unlike the independent charge of criminal conspiracy, the law of parties is not required to be included in the indictment, and may be included in a jury instruction if the evidence supports such an instruction as a possible means by which the crime was committed. *Marable v. State*, 85 S.W.3d 287, 287 (Tex. Crim. App. 2002) ("[I]t is well-settled that the law of parties need not be pled in the indictment."); *see also Moreno v. State*, No. 04-03-00405, 2005 Tex. App. LEXIS 6840, at *1-2 (Tex. App.–San Antonio Aug. 24, 2005, no pet.) (mem. op., not designated for publication) (noting that the trial court could charge the jury on the law of parties even if the theory of liability was not alleged in the indictment).

The law of parties was raised by the evidence in this case, particularly with Alfredo's admissions that he: (1) helped restrain Mancha; (2) attempted to tape Cahue's legs; and (3) hit and kicked Cahue when he resisted. Therefore, the law of parties was a proper means by which Alfredo could be found guilty of murder. Even though it would have been error to instruct the jury on the non-indicted offense of conspiracy, no such instruction appeared in this case. Accordingly, we overrule Alfredo's first issue.

By his second and third issues, Alfredo argues that if conspiracy was to be included, it should have been given with a separate instruction, a separate answer blank for the jury to find conspiracy, and a separate instruction on the range of punishment for an offense of conspiracy to commit capital murder or murder. Alfredo argues that a conspiracy finding would have allowed a second-degree felony finding, allowing sentencing from two to twenty years rather than the possibility of life imprisonment. *See* TEX. PENAL CODE ANN.

6

§ 15.02(d) (Vernon Supp. 2010) (punishment ranges).

Alfredo would only be entitled to an instruction on criminal conspiracy if he could show that it was a lesser-included offense of the indicted offense and if the lesser-included offense was supported by the evidence. *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex. Crim. App. 1985) (describing the two-part test and noting that "[m]erely because a lesser offense is included within the proof of a greater offense, however, does not always warrant a jury charge on the lesser offense."). As we have noted above, criminal conspiracy is not a lesser-included offense of the capital murder alleged in this case, and it would have been error to include such an instruction. *See Woodard*, 2010 Tex. Crim. App. LEXIS 1238, at *1. Therefore, Alfredo was not entitled to an answer blank for the charge of criminal conspiracy, an instruction on the range of punishment for conspiracy, or a blank in the punishment charge for the jury to consider that range of punishment. Accordingly, we overrule Alfredo's second and third issues.

By his fourth issue, Alfredo argues that the trial court erred by charging the jury on aggravated robbery—which was not included in the indictment and is not a lesser-included offense of capital murder. Therefore, he claims he was deprived of fair notice necessary to mount a defense. The State concedes that aggravated robbery is not a lesser-included offense of the capital murder alleged in the indictment in this case but, nevertheless, argues that Alfredo has not demonstrated "egregious harm." We agree with the State.

Alfredo did not object to the jury charge on this ground, and therefore, Alfredo must show "egregious harm" in order to have the trial court's final judgment reversed. *Trejo v. State*, 280 S.W.3d 258, 261 (Tex. Crim. App. 2009); *Ngo v. State*, 175 S.W.3d 738, 743

7

(Tex. Crim. App. 2005); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). Alfredo was not convicted of aggravated robbery, and he does not explain the counter-intuitive proposition that the inclusion of a lesser-included offense of which he was not convicted would cause him to be more likely to be convicted of the more serious offense. Additionally, Alfredo's counsel was clearly complacent in the jury charge as it was given to the jury because he commented several times that the jury should find Alfredo guilty of the robbery, but not of the murder—apparently using the additional instruction to facilitate his trial strategy. In one instance, he said to the jury,

> I could stand here and be ridiculous and tell you [to] find him not guilty of everything. You know what, that would be ridiculous. That really would. You know why? Because he got up there and he said "I went and I went to rob the man." He told you what he went to do. I think you should find him guilty, but you should find him guilty of what he did do, not of something that he did not do.

Regardless of these points, however, Texas law generally presumes that the jury follows the trial court's instructions in the manner presented. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005) (citing *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998); *Williams v. State*, 937 S.W.2d 479, 490 (Tex. Crim. App. 1988); *Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987)). The jury charge instructed the jury to determine whether the evidence proved beyond a reasonable doubt that Alfredo was guilty of capital murder before considering whether he was guilty of murder, and if not, to determine if Alfredo was guilty of murder before considering whether he was guilty of aggravated robbery. Because the jury found Alfredo guilty of murder, we presume that it did not consider the offense of aggravated robbery. *See id*. Thus, the trial court's error in including the instruction on aggravated robbery did not harm Alfredo. *See*

8

*Almanza*, 686 S.W.2d at 171.  Therefore, we overrule Alfredo's fourth issue.

## IV. Conclusion

Having overruled all of Alfredo's issues on appeal, we affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b)

Delivered and filed the
30th day of December, 2010.

9